T.C. Memo. 2007-260

UNITED STATES TAX COURT

STANLEY C. CAMERON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21726-05.              Filed August 30, 2007.

Stanley C. Cameron, pro se.

<u>M. Jeanne Peterson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioner petitioned the Court to redetermine deficiencies in Federal income tax of $2,071 for 2002 and $1,545 for 2003.  We decide whether petitioner's activities involving the purchase and sale of stocks, options, and futures contracts constituted a trade or business.  We hold they did not.

FINDINGS OF FACT

Some facts have been stipulated and are so found.  The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference.  Petitioner resided in Colorado Springs, Colorado, when his petition was filed.

Petitioner holds a bachelor's degree in accounting and began investing in the stock market in 2001.  In 2002, he developed software as an employee of Analysts International and was paid wages of $28,543.  In January 2002, he suffered severe injuries from a car accident which left him unable to work for 4 months.  In August 2002, he received a settlement of $71,553 (after the payment of legal fees and other expenses) as to the accident.  Afterwards, he ceased his employment and began trading in the market to a greater extent.  He purchased software and opened brokerage accounts to enable him execute trades quickly.

Petitioner's 2002 trading activity was conducted through Datek, a brokerage subsequently acquired by Ameritrade.  In 2002, petitioner made 46 purchases totaling $26,108 and 14 sales totaling $17,004.  At the close of 2002, his brokerage account was worth $11,774.  On a Schedule D, Capital Gains and Losses, attached to his 2002 Federal income tax return, petitioner reported that he had realized a $2,127 capital gain from 11 sales.  As reported, six transactions had a holding period of less than 61 days, and three of the transactions had a holding

period of less than 31 days. The holding periods of the remaining 2 of the 11 transactions were not available. The proceeds received on each of the transactions ranged from a high of $5,739 to a low of $529.

Petitioner also included with his 2002 tax return a Schedule C, Profit or Loss from Business, reporting that he had a sole proprietorship named "Cameron Enterprises", the principal business of which was "Cameron Trading". The 2002 Schedule C reported that the business had received gross income of ($18), after taking into account $59 for cost of goods sold reported as a withdrawal for petitioner's personal use.[1] The Schedule C reported that the business paid $200 for "office expenses", $28 for "supplies", and $12,211 for "continuing education". Petitioner's 2002 tax return reported that petitioner was entitled to deduct the $12,457 business loss (negative $18 of gross income less the sum of $200, $28, and $12,211) to arrive at his gross income.

In 2003, all of petitioner's trading activity was conducted through Datek/Ameritrade, OptionsXpress, and Trade Station Securities, Inc. In 2003, petitioner made 109 purchases totaling $79,409 and 103 sales totaling $89,204. His brokerage account at the end of 2003 was worth $10,287, and his futures account was

---

[1] With the exception of this $59 withdrawal, the Schedule C reports no item for cost of goods sold.

worth $2,541.  On his 2003 Schedule D, he reported 65 sales totaling $88,799.  He also reported on Form 6781, Gains and Losses from Section 1256 Contracts and Straddles, losses from futures transactions as a loss from section 1256[2] contracts marked to market.  Petitioner held 30 futures contracts for 1 to 30 days.  He held 21 futures contracts for 31 to 60 days.  He held seven futures contracts for 60 to 90 days.  He held seven futures contracts for 91 to 180 days.  Petitioner's 2003 Schedule C for Cameron Enterprises reported that its "principal business or profession" was "SERVICE MARKET TRADI".  The Schedule C reported no income from the business and expenses totaling $8,797.  The expenses consisted of $959 for travel, $6,043 for continuing education, and $1,795 for "ongoing services".  Also in 2003, petitioner reported receiving unemployment compensation of $11,971.

During the years at issue, petitioner did not conduct trades 5 days a week.  Of the years at issue, there were only 2 months in which petitioner conducted trading activity on more than 10 days.  On the days he was not conducting trades, petitioner was maintaining a cash position.

Petitioner's continuing education expenses for 2002 and 2003 were attributable to his attending seminars related to his

---

[2] Unless otherwise indicated, section references are to the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

trading activities. These expenses consisted of amounts spent on supplies, books, journals, computer software, online services, classes, seminars, travel, and meals.

Respondent determined in the notice of deficiency that the $200 and $28 expenses deducted for 2002 were deductible under section 212. Respondent also determined that petitioner was not entitled to deduct any of the remaining expenses claimed on his 2002 and 2003 Schedules C. As to all of the expenses, the notice states that petitioner had not established that they were "ordinary and necessary business expenses" or were "expended for the purpose designated". The notice also states as to the claimed expenses for continuing education and ongoing services that petitioner did not establish that any of those expenses were incurred for the production of income or, to the extent of the expenses claimed for education, that they "were incurred primarily to maintain or improve skills required in your present employment, trade, or business, or to meet the express requirements of your employer".

## OPINION

Petitioner argues that he was in the trade or business of trading securities and entitled to deduct expenses related to his trading activities as "above the line" deductions pursuant to section 162(a). Respondent argues that petitioner did not trade his securities in a trade or business and, to the extent that his

expenses are deductible, they are deductible as "below the line" deductions pursuant to section 212. We agree with respondent.

The Internal Revenue Code does not define the term "trade or business". Commissioner v. Groetzinger, 480 U.S. 23, 27 (1987); Estate of Yaeger v. Commissioner, 889 F.2d 29, 33 (2d Cir. 1989), affg. 92 T.C. 180 (1989). Whether petitioner's activities constituted a trade or business is a question of fact. See Higgins v. Commissioner, 312 U.S. 212, 217 (1941); Estate of Yaeger v. Commissioner, supra at 33; Mayer v. Commissioner, T.C. Memo. 1994-209; Paoli v. Commissioner, T.C. Memo. 1991-351. Petitioner has the burden of proof. See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).[3]

In determining whether a taxpayer's trading activities constituted a trade or business, courts have distinguished between "traders" and "investors". Moller v. United States, 721 F.2d 810, 813 (Fed. Cir. 1983); see also Levin v. United States, 220 Ct. Cl. 197, 597 F.2d 760, 765 (1979). Management of securities investments, regardless of the extent and scope of such activity, is seen as the work of a mere investor, "not the trade or business of a trader." Estate of Yaeger v.

---

[3] Under sec. 7491(a)(1), the burden of proof may shift to the Commissioner if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's proper tax liability and meets certain requirements under sec. 7491(a)(2). Petitioner did not raise an issue as to the application of sec. 7491, and we find that section is inapplicable to this case.

Commissioner, supra at 34; see also Whipple v. Commissioner, 373 U.S. 193, 202 (1963); Higgins v. Commissioner, supra at 217; Paoli v. Commissioner, supra; Beals v. Commissioner, T.C. Memo. 1987-171. This result is the same notwithstanding the amount of time the individual devotes to the activity. Mayer v. Commissioner, supra. Even "full-time market activity in managing and preserving one's own estate is not embraced within the phrase 'carrying on a business,' and * * * salaries and other expenses incident to the operation are not deductible as having been paid or incurred in a trade or business." Commissioner v. Groetzinger, supra at 30. Instead, an investor's expenses may be deductible under section 212 to the extent that expenses were incurred in the production of income.[4] Sec. 212; Whipple v. Commissioner, supra at 200; United States v. Gilmore, 372 U.S. 39, 45 (1963).

In determining whether a taxpayer who manages his own investments is a trader, nonexclusive factors to consider are: (1) The taxpayer's investment intent, (2) the nature of the income to be derived from the activity, and (3) the frequency, extent, and regularity of the taxpayer's securities transactions. Moller v. United States, supra at 813. For a taxpayer to be a

---

[4] In contrast to trade or business expenses, a taxpayer's investment-related expenses that are deductible under sec. 212 are subject to a limitation under sec. 67(a) and do not reduce alternative minimum taxable income.

trader, the trading activity must be substantial, which means "frequent, regular, and continuous enough to constitute a trade or business" as opposed to sporadic trading. Ball v. Commissioner, T.C. Memo. 2000-245. A taxpayer's activities constitute a trade or business where both of the following requirements are met: (1) The taxpayer's trading is substantial, and (2) the taxpayer seeks to catch the swings in the daily market movements and to profit from these short-term changes rather than to profit from the long-term holding of investments. Mayer v. Commissioner, supra. Respondent concedes that petitioner meets the second requirement; thus, we focus on the first requirement.

As to the first requirement, we find petitioner's trading activity was not substantial. Courts consider the number of executed trades in a year and the amount of money involved in those trades when evaluating whether a taxpayer's trading activities were substantial. See, e.g., Mayer v. Commissioner, supra; Paoli v. Commissioner, supra. In Paoli, the Court held trading activities were substantial when the taxpayers traded stocks or options worth approximately $9 million. In Mayer, the Court considered over 1,100 executed sales and purchases in each of the years at issue there to be substantial trading activity. Trading activity was found to be insubstantial when a taxpayer executed at most 83 purchases and 41 sales in one year and 76

purchases and 30 sales in the second year.  Moller v. United States, supra at 813.

In 2002, petitioner's trading activity consisted of 46 purchases and 14 sales.  In 2003, he completed 109 purchases and 103 sales.  During the years at issue, petitioner did not trade 5 days a week.  Of the years at issue, he traded on more than 10 days in a given month only twice.  We also note that petitioner's collecting unemployment compensation during 2003 further undermines his argument that he was engaged in a trade or business during that year.  We conclude that petitioner was not engaged in a trade or business of trading securities during the years at issue and thus that his expenses related to his trading activities are not deductible under section 162.  We also agree with respondent's determination that none of the expenses, but for the $200 and $28 expenses allowed in the notice of deficiency, are deductible by petitioner under section 212, in that petitioner has failed to demonstrate that the expenses were incurred for the production of income.  We also note in this regard the applicability of section 274(h)(7), which disallows any deduction under section 212 for expenses allocable to a convention, seminar, or similar meeting.

We have considered all petitioner's arguments for holdings contrary to those expressed herein and reject the arguments not discussed herein as irrelevant or without merit.

<u>Decision will be entered</u>

<u>for respondent</u>.